UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No.: 0:22-cv-60112-RNS

ISAACA THORPE,

      Plaintiff,

v.

HEALTHCARE REVENUE RECOVERY
GROUP, LLC, d/b/a ARS ACCOUNT
RESOLUTION SERVICES

      Defendant.

_____/

## DEFENDANT HEALTHCARE REVENUE RECOVERY GROUP, LLC, D/B/A ARS ACCOUNT RESOLUTION SERVICES' MOTION FOR SUMMARY JUDGMENT

COMES NOW, Defendant, Healthcare Revenue Recovery Group, LLC, d/b/a ARS Account Resolution Services ("ARS" or "Defendant"), by and through its undersigned attorneys and pursuant to Rule 56, *Federal Rules of Civil Procedure*, hereby requests entry of Summary Judgment in its favor against Plaintiff, Isaaca Thorpe (hereinafter "Plaintiff"), and as grounds, therefore, states as follows:

### I.    Procedural Posture

1. On January 14, 2022, Plaintiff filed her Complaint against Defendant alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), based on the allegations that Defendant reported credit information, which is known to be false, including failure to communicate that a disputed debt is disputed. **[ECF No. 1 at ¶18]**.

2. Defendant denies all liability and damages as to Plaintiff's claims under the FDCPA. **[ECF No. 16, pg. 1]**. Defendant further asserts it is entitled to summary judgment as a

matter of law since there is no genuine issue of fact as to whether Defendant complied with the

FDCPA.

3.    Defendant is entitled to summary judgment for the following reasons:

i)    Defendant does not have an affirmative obligation to re-report the debt once Defendant submitted Plaintiff's credit information to credit bureaus, and thus Plaintiff's claim under Section 1692e (8) is contrary to the overwhelming number of cases addressing this issue.

ii)   Defendant never received the October 13, 2021, fax sent by Plaintiff requesting the debt be marked as disputed. *See* **[ECF No. 32-1]**.

iii)  Eventually, Plaintiff requested Defendant "unmark" the account as disputed, essentially meaning if there was a violation (which Defendant contends there was not one) then there was no damage by the "delayed" reporting. *See generally*, letter to Defendant, Dated March 25, 2022, requesting Defendant "Please remove the dispute comment from the account" for the debt at issue. **[ECF No. 28-6, Ex. 5]**.

iv)   There is no evidence in the record in opposition to Defendant's evidence presented alongside this Motion. ***See* Declaration of Patrick Brennan, previously filed and marked as ECF No. 30-1.**

v)    In the alternative, Defendant, in accordance with its own internal policies and procedures, did report the debt as disputed to the credit reporting agencies on February 5, 2022. This action was taken to avoid communicating information to any person, "which is known to be false or should be known to be false, including failing to report a disputed debt as disputed," *see* e.g., 15 U.S.C. § 1692e (8) – although no such duty to investigate exists under the law.

**WHEREFORE**, Defendant, Healthcare Revenue Recovery Group, LLC, d/b/a ARS

Account Resolution Services respectfully requests the Court grant its Motion for Summary

Judgment in its entirety.

**II.    Legal Argument in Support of ARS's Motion for Summary Judgment.**

***Memorandum of Law***

**A.  Standard of Review**

Rule 56(c), *Federal Rules of Civil Procedure*, provides that summary judgment "shall be

rendered forthwith if the pleadings, depositions, answers to Interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fennell v Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009). To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). In considering a motion for summary judgment, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Abel v. S. Shuttle Servs., Inc.,* 620 F.3d 1272, 1273 n.1 (11th Cir. 2010); *Matshushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *SEC v. Blavin*, 760 F.2d 706 (6th Cir. 1985).

Once the moving party has met the burden of showing that no genuine issue of material fact exists, the non-moving party may not merely rest on conclusory allegations contained in the complaint but must respond with affirmative evidence supporting its claim and establishing the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Porter v. Ray,* 401 F.3d 1315, 1320 (11th Cir. 2006) (non-moving party must go beyond pleadings); *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (moving party discharges burden by showing absence of evidence to support non-moving party's case); *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir. 1985)(conclusory allegations without specific supporting facts have no probative value). Not every factual dispute between the parties will prevent summary judgment; the disputed facts must be material; they must be facts that, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute must also be genuine. The facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* The disputed issue does not have to be resolved conclusively in favor of the non-moving party,

but that party is required to present some significant probative evidence that makes it necessary to resolve parties' differing versions of the dispute at trial. *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968).

Once the defendant demonstrates that the plaintiff cannot produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of the case, summary judgment should be entered. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992).

### B. FDCPA

4.      Plaintiff alleged that Defendant violated 15 U.S.C. § 1692e by reporting credit information which is known to be false, including failure to communicate that a disputed debt is disputed. **[ECF No. 1 at ¶18]**.

5.      Summary Judgment should be granted in Defendant's favor because:

i)      Defendant does not have an affirmative obligation to re-report the debt once Defendant submitted Plaintiff's credit information to credit bureaus, and thus Plaintiff's claim under Section 1692e (8) is contrary to the overwhelming number of cases addressing this issue.

ii)     Defendant never received the fax sent by Plaintiff requesting the debt be marked as disputed**. [ECF No. 32-1]**.

iii)    Eventually, Plaintiff requested Defendant "unmark" the account as disputed, essentially meaning if there was a violation (which Defendant contends there was not one) then there was no damage by the "delayed" reporting. See generally, letter to Defendant, Dated March 25, 2022, requesting Defendant "Please remove the dispute comment from the account" for the debt at issue. **[ECF No. 28-6 Ex. 5]**.

iv)     There is no evidence in the record in opposition to Defendant's evidence presented in **ECF No. 30**.

v)      In the alternative, Defendant, in accordance with its own internal policies and procedures, did report the debt as disputed to the credit reporting agencies on February 5, 2022. This action was taken to avoid communicating information to any person, "which is known to be false or should be known to be false, including failing to report a disputed debt as disputed," see e.g. 15 U.S.C. § 1692e (8) – although no such duty to investigate exists under the law.

**IV.    The Court Should Enter Summary Judgment in Defendant's Favor.**

6.    Section 1692e prohibits the use of any false, deceptive, or misleading representation or means in connection with the collection of any debt, including "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

7.    Plaintiff asserts that Defendant reported credit information, which is known to be false, including failure to communicate that a disputed debt is disputed that resulted in a violation of FDCPA, Section 1692e. *See generally* **[ECF No. 1 at ¶18]**.  The Eleventh Circuit has not touched on this issue; however, Courts in the Second, Third, Fifth, Sixth, Seventh, and Ninth Circuits have adopted the reasoning laid out by the Eighth Circuit in *Wilhelm v. Credico, Inc*., 519 F.3d 416, 421 (8th Cir. 2008); *see e.g., Llewellyn v. Allstate Home Loans, Inc*., 711 F.3d 1173, 1189 (10th Cir. 2013*); Leapai v. Collection Bureau of Am., LTD*., No. C16-0766-JCC, 2016 U.S. Dist. LEXIS 129903, at *4 (W.D. Wash. Sep. 22, 2016); *Young v. Fair Collections & Outsourcing, Inc*., No. 3:13-CV-1305-P, 2013 U.S. Dist. LEXIS 193552, at *6 (N.D. Tex. Oct. 23, 2013). And so, the *Wilhelm* Court reasoned that:

> Section 1692e generally prohibits "false, deceptive, or misleading representation." Subsection 1692e(8) applies to the "communicating" of "credit information." "Communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium."...Reading these provisions together, as we must, the relevance of the portion of § 1692e(8) on which [plaintiff] relies — "including the failure to communicate that a disputed debt is disputed" — is rooted in the basic fraud law principle that, if a debt collector elects to communicate "credit information" about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt. This interpretation is confirmed by the relevant part of the Federal Trade Commission's December 1988 Staff Commentary on the [FDCPA]:
>
> **1.  Disputed debt. If a debt collector knows that a debt is disputed by the consumer and reports it to a credit bureau. He must report it as disputed.**

**2.  Post-report dispute. When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported.**

*Id*. at 418 (emphasis added) (citing FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988)). The courts in the Seventh Circuit who have addressed the issue have agreed with the Wilhelm court's determination. *See Gordon v. Syndicated Office Sys*., No. 16 c 4440, 2017 U.S. Dist. LEXIS 43811, at *7 (N.D. Ill. Mar. 27, 2017); *Wells v. Deca Fin. Servs., LLC*, No. 1:12-cv-01514-JMS-DKL, 2013 U.S. Dist. LEXIS 27416, at *12 (S.D. Ind. Feb. 28, 2013); *Rogers v. Virtuoso Sourcing Grp., LLC*, No. 1:12-cv-01511-JMS-DML, 2013 U.S. Dist. LEXIS 27409, at *11 (S.D. Ind. Feb. 28, 2013). Thus, these cases specifically address circumstances, such as this one, where a debt collector's obligation when a post-report dispute occurs. *Id*.

8.      In *Spina v. Quality Asset Recovery, LLC*, No. 8:15-cv-2155-T-TBM, 2017 U.S. Dist. LEXIS 216573 (M.D. Fla. May 26, 2017), the defendant's motion for summary judgment was granted when it argued that Plaintiff's claim under 15 U.S.C. § 1692e(8) failed as a matter of law in that defendant was not obligated to re-report a debt as disputed when it learns of the dispute only after it has reported the same to the credit reporting agencies ("CRAs"). The evidence proved that the defendant reported the subject debt to the CRAs in May of 2014. As the plaintiff did not dispute the debt until October 2014, defendant maintained it had no duty thereafter to re-report the debt as disputed and thus there was no violation of § 1692e(8). In support of its position, the defendant relied in a large part on the Eighth Circuit's decision in *Wilhelm*[1]. Ultimately, in *Spina* the United States District Court for the Middle District of Florida granted summary judgment in favor of the defendant and it reasoned that according to the FTC Commentary and persuasive authority, the defendant did not have an affirmative duty to report the debt as disputed and its

---

[1] Wilhem v. Creditco, inc., 519 F.3d 416 (8th Cir. 2008).

failure to do so did not amount to a false reporting of the debt in violation of §1692e(8) **(Emphasis Added)**.

9.      The *Spina* court found that while the defendant continued to report the debt as active after October 2014, the batch reporting of such did not communicate credit information, and these reports were not rendered false in contemplation of § 1692e(8) by reason because of the omission that the debt was disputed. Plaintiff's claim that defendant continued to report the subject debt with no indication that it was in dispute and was required to report it as disputed at that time, is unsupported by competent evidence.

10.      The record evidence in our case proves that on July 23, 2020, ARS sent Plaintiff a collection notice requesting payment for the Underlying Debt and validation of the same within thirty (30) days of this notice. **[ECF No. 30-1 at ¶8]**.

11.      Plaintiff failed to respond to the July 23, 2020, letter.

12.      Defendant initially reported the subject account to the CRAs on October 3, 2020.

13.      On October 13, 2021, Plaintiff alleges she faxed a dispute request for the Underlying Debt to Defendant.

14.      On November 29, 2021, Plaintiff asserts that she obtained her Equifax and Trans Union credit disclosures, which showed Defendant last reported the collection item reflected by the Equifax and Trans Union on October 30, 2021, and failed or refused to flag them as disputed, in violation of the FDCPA. **[ECF No. 1 at ¶10]**.

15.      At deposition, Plaintiff admitted that she did not send the October 13, 2021, Letter to ARS to dispute the Underlying Debt and that she has never made contact directly with ARS:

        BY MR. KOHLMYER:

        1 Q It says the next day that "Plaintiff sent
        2 Defendant a letter disputing the credit reporting item."

3 Is that accurate?
4 A My Counsel sent the letter. I don't know who,
5 what part of the Counsel sent it, but my Counsel sent
6 the letter.
7 Q Okay.
8 A With my authorization.
9 Q Okay. That's fine. So in regards to
10 paragraph 9, part of the -- the service was that your
11 Counsel drafted a letter to my client and ARS disputing
12 the debt on your behalf?
13 A Yes.
14 Q Okay. And that in November, that -- that
15 dispute was not listed on the credit bureau, correct?
16 A Yes.
17 Q Did you personally observe that?
18 A With my Counsel.

*See,* **[ECF No. 28-1] (Pl. Dep. Pg. 31, ¶1-18)**.

2 Q Okay. Do you have any information that -- or,
3 well, strike that. Did you speak with anybody with --
4 that represents ARS?
5 A No.
6 Q Did you -- did anybody at ARS ever indicate to
7 you that they were not going to re -- mark this as
8 disputed purposely to hurt you?
9 MR. BRENNAN: Objection to the form. You can
10 answer.
11 A No. I never had any contact with ARS.

*See* **[ECF No. 28-1] (Pl. Dep. Pg. 32, ¶2-11)**.

16.    Plaintiff's Response to Defendant Request for Admission #10, further proves that

she did not send the October 13, 2021, letter:

10. Admit that the correspondence dated October 13, 2021 was sent out by
someone other than the Plaintiff at a later date than indicated on the face of
the document.

RESPONSE: Admit.

*See* **[ECF No. 31-1].**

17.     Plaintiff testified that the law firm drafted and sent the October 13, 2021, Letter on her behalf. *Id*.

18.     Plaintiff's representatives faxed the alleged October 13, 2021, Letter to +1 (865) 292-3015. **[ECF No. 32-1].**

19.     ARS does not receive faxes at +1 (865) 292-3015. **[ECF No. 30-1 at ¶12].**

20.     Fax number +1 (865) 292-3015 is not a fax number associated with, monitored by, or in control of ARS. **[ECF No. 30-1 at ¶13].**

21.     ARS never received Plaintiff's October 13, 2021, fax. **[ECF No. 30-1 at ¶14].**

22.     ARS became aware of Plaintiff's dispute after receiving the Complaint that initiated this litigation and flagged the account accordingly, on January 17, 2022. **[ECF No. 30-1, ¶10-11]**.

23.     Despite not having the duty to report the Underlying Debt as disputed, ARS went ahead and marked it on the next reporting cycle.

24.     Summary Judgment should be entered in favor of ARS because the undisputed facts and evidence of this case are analogous to *Spina*. The undisputed facts in *Spina* were that Defendant learned of the dispute in October of 2014, when it previously reported the debt in May of 2014. The record evidence our case proves that ARS reported the debt to the CRAs on or about October 3, 2020, and did not learn of the dispute until the filing of the lawsuit in January 2022. When a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported. ("no reason to depart from Wilhelm and the myriad other cases that have held that a debt collector has no 'continuing duty . . . to advise consumer reporting agencies that a debt has been disputed, even when the dispute occurs after the debt collector reports the debt'"). ***See Generally, Spina***.

25.     The record evidence proves that ARS learned that the Underlying Debt was disputed only after it reported Plaintiff's credit information to CRAs.

26.     In obtaining verification of the debt, ARS reasonably relied on its client's (Inphynet Contracting, Inc.) representation that the debt was valid.   *See Bacelli v. MFB, Inc*., 729 F. Supp. 2d 1328, 1330 (M.D. Fla. 2010) (recognizing that "[t]he Fair Debt Collection Practices Act, 15 U.S.C.S. § 1692 et seq., generally imposes no duty on a debt collector to independently verify information provided by a creditor."). As part of ARS's policies and procedures, ARS reported the Underlying Debt as disputed to the credit reporting agencies on the next cycling report on February 5, 2022, and reported it as disputed, each succeeding month. [**ECF No. 30-1, ¶11**].

27.     The account on the Underlying debt is currently being reported to the CRAs using code XB. [**ECF No. 30-1, ¶15**].

28.     ARS's truthful credit reporting in no way violated Section 1692e(8) of the FDCPA. *See* 15 U.S.C. § 1692e(8). Thus, ARS satisfied all of its legal obligations under the FDPCA. *See* 15 § U.S.C. 1692e(8).  ARS is entitled to motion for summary judgment as to Plaintiff's FDCPA claim.

29.     Because ARS never received the alleged fax from Plaintiff, it never had knowledge the Plaintiff wanted the account marked as disputed.

30.     Recently the Federal Courts have been inundated with various types of "gotcha" litigation and have determined that these "gotcha" style cases where there is no concrete injury are illegitimate. Although this case is not a Hunstein/letter vendor type case, some of the same considerations are applicable to our facts.

31.     [Hunstein/letter vendor] cases are often brought for the non-salutary purpose of squeezing a nuisance settlement and a pittance of attorneys' fees out of a collection company,

which it will often find cheaper to pay than to litigate. *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57 (2021).

32.     First, in *TransUnion*[2], the Supreme Court held that the "mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."

33.     Second, *TransUnion* emphasizes that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a separate concrete harm.[3]"

34.     Federal Courts in those types of cases have frowned upon actions where cases are filed [to] "abuse but also imprecise language, and it has turned FDCPA litigation into a glorified game of "gotcha," with a cottage industry of plaintiffs' lawyers filing suits over fantasy harms the statute was never intended to prevent." *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57 (2021).

35.     This action has very similar attributes to those cases because it was filed over fantasy harms the statute never intended to prevent. Ms. Thorpe alleges that the delay[4] in marking the Underlying Debt as disputed damaged her credit score. However, the fact of the matter is that her credit score was in the 400s at the time of hiring counsel. **[ECF No. 28-1] (Pl. Dep. Pg. 27, ¶1-9).**

36.     Even if the disputed marking delay caused damage to her credit, which Defendant's Expert will testify that it didn't, a credit score in the 400s is the result of many credit deficiencies. Amassing so much debt that a credit score is in the 400s and filing suit against ARS for delayed

---

[2] TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021).
[3] *Id.*
[4] The alleged "inaccuracy" in this case is Plaintiff's allegation that the timing of the reporting of the Underlying Debt being marked as undisputed caused concrete harm.

reporting is the functional equivalent of fantasy harms that took place in the Hunstein/letter vendor type cases.

37.     If Defendant's "delayed" dispute marking of the Underlying Debt was the cause of the score deficiency, then Plaintiff would have never sent the March 25, 2022, letter requesting ARS to "please remove the dispute comment from the account." **[ECF No. 28-6, Ex. 5].**

38.     Finally, Summary Judgment should be granted in favor of Defendant because "the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Plaintiff is unable to fulfill this obligation.

39.     Rule 56 (c), *Federal Rules of Civil Procedure*, requires supporting factual positions by:

(A)     "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

40.     As of the date of this Motion, Plaintiff failed to disclose an expert. The expert disclosure deadline was August 11, 2022. **[ECF No. 20 at pg. 1]**[5].

41.     Plaintiff's responses to Defendant's discovery fail to evidence any specific facts that a genuine issue exists for trial.

42.     Plaintiff did not conduct the deposition of Defendant's Corporate Representative. Fact discovery concluded on August 11, 2022. **[ECF No. 20 at pg. 1]**.

43.     As such, Plaintiff has failed to go beyond her initial pleadings to show what specific facts are at issue.

---

[5] Rule 26(a)(2)(D)(ii), *Federal Rules of Civil Procedure*, allows Plaintiff to disclose a Rebuttal Disclosure by September 11, 2022.

V.     **Alternatively, ARS Asserts It Actually Reported the Dispute to the CRAs upon receipt of the Complaint and No Violation Occurred under Section 1692a(6).**

44.     Section 1692k(c) provides that a debt collector may not be held liable under the FDCPA if it shows by a preponderance of the evidence "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c). Accordingly, even if the Court declines to determine that there was no violation as a matter of law, it should grant summary judgment for ARS under the alternative defense of bona fide error.

45.     To establish a bona fide error defense, ARS must show by a preponderance of the evidence that its violation of the Act: (1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably. *Edwards v. Niagara Credit Solutions*, Inc., 584 F.3d 1350, 1352 (11th Cir. 2009) (citation omitted); *see* 15 U.S.C. § 1692k(c). "The first prong requires a showing that 'the violation was unintentional, not that the underlying act was unintentional,' such that [ARS] must 'establish the lack of specific intent to violate the Act.'" *Arnold v. Bayview Loan Servicing, LLC*, 659 F. App'x 568, 571 (11th Cir. 2016) (quoting *Johnson v. Riddle*, 443 F.3d 723, 727-28 (10th Cir. 2006)).

46.     The second prong requires a showing that "the error resulting in a violation" was "objectively reasonable" and that it was "made in good faith; a genuine mistake, as opposed to a contrived mistake." *Edwards*, 584 F.3d at 1352 (citation omitted). The third prong involves a two-step inquiry: (a) "whether the debt collector 'maintained'—i.e., actually employed or implemented—procedures to avoid errors" and (b) "whether the procedures were 'reasonably adapted' to avoid the specific error at issue." *Owen*, 629 F.3d at 1273-74. This is a "fact-intensive

inquiry" that "proceed[s] on a case-by-case basis and depend[s] upon the particular facts and circumstances of each case." *Id*. at 1274.

47.     The first and second prong can easily be met as ARS did not learn of the dispute as to the Underlying Debt's validity until the Complaint was filed on January 14, 2022, **[ECF No. 1]**, which was after ARS had already submitted Plaintiff's credit information to the credit reporting agencies as undisputed.

48.     Thus, any violation that occurred, if any, "was not intentional," *see generally, Edwards*, 584 F.3d at 1353, and ARS did not report to various credit bureaus about this dispute until after it learned of the debt "was a bona fide error."

49.     Plaintiff further admitted that she did not dispute the debt with the original creditor, credit reporting agencies, or request an investigation of ARS's billing on her credit report. The applicable responses to Defendant's Request for Admissions are as follows:

> 1. Admit that You have not initiated any verbal or written disputes as to the Subject Debt with the Original Creditor.
>
> RESPONSE: Admit.
>
> 2. Admit that You have not initiated any verbal or written disputes as to the Subject Debt with the CRAs.
>
> RESPONSE: Admit.
>
> 8. Admit that You did not respond to any written correspondence You received from ARS pertaining to the Subject Debt.
>
> RESPONSE: Admit.
>
> 9. Admit that You did not send dispute correspondence to Defendant until after You noticed the Subject Debt listed on Your Credit Report.
>
> RESPONSE: Admit.

Thus, ARS did not intentionally report inaccurate information to the credit bureaus because ARS was unaware that Plaintiff disputed the Underlying Debt.

*See* **[ECF No. 31-1].**

50.    As to the third prong, ARS has established that any violation "occurred despite the maintenance of procedures reasonably adapted to avoid such error." **[ECF No. 30-1, ¶9].**

51.    As discussed above, ARS reported the Underlying Debt as disputed to the credit reporting agencies on February 5, 2022, which was the next cycle of reporting after it learned of the dispute with the filing of the Complaint, and then reported it as such, each succeeding month. **[ECF No. 30-1, ¶11]**.

52.    The evidence reflects that ARS's policy to report to credit agencies when a consumer disputes the underlying debt even after it reports the debt to the credit bureaus was reasonably adopted to avoid errors and/or violations under the FDCPA – even though no such requirement exists under state and federal law.

53.    These facts conclusively evidence ARS's entitlement to the alternative defense of bona fide error on Plaintiff's claim under section 1692g(a). These policies and procedures are reasonably adapted to ensure compliance with section 1692g(a).  For these reasons, ARS alternatively requests that the Court enter judgment in its favor on Plaintiff's claim under section 1692g(a).

WHEREFORE, Defendant, Healthcare Revenue Recovery Group, LLC d/b/a Ars Account Resolution Services, respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in its favor on all claims against it in Plaintiff's Complaint, **[ECF No. 1]**, as provided for under applicable

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on **August 26, 2022**, via the Clerk of Court's CM/ECF system. I further certify that the foregoing has been sent via electronic transmission to the following: Daniel Brennan, Esq. at daniel@crlam.com *(Attorney for Plaintiff).*

<u>*/s/ Ernest H. Kohlmyer, III*</u>
Ernest H. Kohlmyer, III
Florida Bar No.: 110108
SKohlmyer@shepardfirm.com
service@shepardfirm.com
Shepard, Smith, Kohlmyer & Hand, P.A.
2300 Maitland Center Parkway, Suite 100
Maitland, Florida 32751
Phone: (407) 622-1772
Fax: (407) 622-1884
*Attorneys for Defendant, Healthcare*
*Revenue Recovery Group LLC d/b/a ARS*
*Account Resolution Services*